74

## Pennsylvania Forge Company v. City of Philadelphia et al.

*George Wanger*, for plaintiff.

*G. Coe Farrier* and *James Hall Prothero*, assistant city solicitors, for defendants.

MacNeille, J., October 4, 1932.—The pleadings in this case consist of a bill of complaint, an amended bill of complaint and an answer to the amended bill.

The bill set forth that for many years prior to February 23, 1926, plaintiff was the owner of certain real estate which is involved in this suit; that on November 12, 1925, an ordinance of the Council of the City of Philadelphia authorized the revision of the lines and grades of certain streets through the said tract; that on March 22, 1927, another ordinance by the city council authorized a revision of the lines and grades of the same streets; that in order to facilitate the carrying out of the purpose of said ordinances, the plaintiff executed a deed of dedication of one-half of the bed of what is known as Buckius Street and delivered the deed to Fred Schwarz, Jr., to be held in escrow until the City of Philadelphia should carry out the revision of the streets, in accordance with the ordinances, and until the owner of the other half of the bed of the said street should deliver a deed of dedication therefor; that in spite of the fact that the deed of the adjoining owner for the other half of the street was not delivered, the escrow was violated and the plaintiff's deed placed on record— thus delivering the property to the City of Philadelphia.

The plaintiff, therefore, asks that the deed from it be declared null and void, and the city ordered to surrender the same for cancellation and to reconvey to the plaintiff.

The answer admits most of the plaintiff's averments, but denies that the city had any knowledge of the plaintiff delivering this deed in escrow, and craves proof, and makes further answer that the city, acting through its Department of Public Works, proceeded, between February 23, 1926, and February 14, 1929, to grade the premises described in plaintiff's amended bill, which lies in the bed of Buckius Street, at a large expense, and with full knowledge and acquiescence of the plaintiff, and without objection from the plaintiff, and, therefore, denies the right of the plaintiff to a rescission of its deed of dedication.

Upon these pleadings the matter came on for hearing and testimony was taken, upon which we make the following

*Findings of fact*

1. On February 23, 1926, and for many years prior thereto, Pennsylvania Forge Company was the owner, inter alia, of certain real estate in the City of Philadelphia, more specifically described as follows:

"All that certain lot or piece of ground, situate in the Forty-fifth Ward of the City of Philadelphia, described as follows: Beginning at the intersection of the southwest side of Jenks Street and the southeast side of Bath Street. Thence extending along the southeast side of Bath Street south fifty-seven degrees thirty-five minutes thirty-seven seconds west seven hundred and forty-seven feet and one-eighth inch to the northeast side of Buckius Street. Thence along the same south twenty-seven degrees fifty-eight minutes twelve seconds east nine hundred and thirteen feet and three-quarters of an inch to the northwest side of Delaware Avenue. Thence along the same south twenty-eight degrees forty-three minutes forty-four seconds west twenty-nine feet eleven inches to center line of Buckius Street. Thence along the same north twenty-seven degrees fifty-eight minutes twelve seconds west nine hundred and fifty-two feet seven and one-half inches to the center line of Bath Street. Thence along the same north fifty-seven degrees thirty-five minutes thirty-seven seconds east seven hundred and seventy feet five inches to the southwest side of Jenks Street. Thence along the same thirty-one degrees forty-seven minutes thirty-nine seconds east twenty-five feet to the first mentioned point and place of beginning.

"Being part of the bed of Bath Street between Jenks Street and Buckius Street and part of the bed of Buckius Street between the center line of Bath and the northwest line of Delaware Avenue."

2. On February 23, 1926, Pennsylvania Forge Company, by its proper officers, duly authorized, executed a deed of dedication to the City of Philadelphia for the real estate hereinbefore described, which said deed was acknowledged February 24, 1926.

3. The said deed was delivered to Fred Schwarz, Jr., accompanied by the following letter:

"PENNSYLVANIA FORGE COMPANY
"Forgings, Die Blocks, Forged Steel Pipe Flanges
"Main Office and Works
"Philadelphia, Pa.

"Coroner Fred Schwarz, Jr.,              "February 25, 1926.
4819 Garden Street,
Philadelphia, Pa.

"Dear Coroner: The District Surveyor thinks it would be just as well to have two deeds of dedication, the second one to cover Buckius Street from Delaware Avenue to Bulkhead Line. This will enable you to take care of the contractor, who I understand has a considerable sum of money tied up. Under these conditions, and with the understanding that you will use your best efforts to have the Hitner Company do their part, I am sending you herewith the deed, which you gave me to be signed, duly executed.

"Trusting that you will find this in order, we remain,

"Your truly,
"PENNSYLVANIA FORGE COMPANY,
[Signed]    "C. C. DAVIS,
"CCD:JJC.                         "President."

4. On February 14, 1929, the aforesaid deed was recorded in Deed Book J. M. H. 2905, at page 535, etc.

5. Subsequent to February 25, 1926, and prior to the recording of the deed, Fred Schwarz, Jr., used his best efforts to accomplish the desires of the grantor.

6. Pennsylvania Forge Company is a Pennsylvania corporation of the second class, in accordance with the provisions of the act of assembly of the Commonwealth of Pennsylvania referring thereto.

7. On November 12, 1925, W. Freeland Kendrick, Mayor of Philadelphia, approved an ordinance of the Council of the City of Philadelphia, authorizing the revision of the lines and grades of Buckius Street, from Delaware Avenue to the bulkhead line of the Delaware River; Lefevre Street, from Bath Street to the bulkhead line of the Delaware River, and to strike from the city plan Balfour Street, from Buckius Street to Delaware Avenue, and Jenks Street, from Bath Street to Delaware River; Provided, that the owners of property within the lines of the said Buckius and Lefevre Streets, as revised, should, within one year from the date of the approval of this ordinance, dedicate the beds of the same to the city without cost, or should file a bond in form satisfactory to the city solicitor to indemnify the city against all damages or claims for damages by reason of the revision of the said streets and their subsequent opening to the confirmed lines and grades; and further provided, that a bond should be filed in form satisfactory to the city solicitor to indemnify the city against any damages or claims for damages by reason of· striking from the city plan the said Balfour and Jenks Streets.

8. On March 22, 1927, W. Freeland Kendrick, Mayor of Philadelphia, approved an ordinance of the Council of the City of Philadelphia, authorizing the revision of the lines and grades of Buckius Street, from Delaware Avenue to the bulkhead line of the Delaware River; Lefevre Street, from Bath Street to Delaware Avenue; and to strike from the city plan Balfour Street, from Lefevre Street, as revised, to Delaware Avenue; Jenks Street, from Bath Street to the Delaware River; Casper Street, from Lefevre Street, as revised, to Delaware Avenue; and Lefevre Street, from Delaware Avenue to the Delaware River; Provided, that the owners of property within the lines of the said Buckius Street and Lefevre Street, as revised, should within one year from the date of the approval of this ordinance dedicate the beds of the same to the city without cost, or, should file a bond, in form satisfactory to the city solicitor, to indemnify the city against all damages or claims for damages by reason of the revision of the said streets and their subsequent opening to the confirmed lines and grades; and provided further that a bond should be filed, in form satisfactory to the city solicitor, to indemnify the city against any damages or claims for damages by reason of striking from the city plan the said Balfour Street, Jenks Street, Casper Street and Lefevre Street.

9. The said deed was executed by Pennsylvania Forge Company at the request of one Thomas B. Harbinson, a public-spirited citizen of Philadelphia, who then desired to secure the location of a main sewer in Buckius Street, east of Richmond Street, in the City of Philadelphia.

10. At the request of the said Thomas B. Harbinson, the aforesaid deed, having been executed and acknowledged, was delivered to one Fred Schwarz, Jr., a prominent citizen and official of the City of Philadelphia, to hold the same in escrow until a deed of dedication should be secured from the owners of the other opposite one-half of the bed of Buckius Street from that hereinbefore described; and until the City of Philadelphia should and did strike off the city plan Balfour Street between Bath and Jenks Streets; and strike off from the city plan Jenks Street between Bath Street and the Delaware River.

11. The owners of the opposite one-half of the bed of Buckius Street, opposite to the property of Pennsylvania Forge Company, never did dedicate their one-half of the bed of the said Buckius Street to the City of Philadelphia.

12. The City of Philadelphia has never stricken from the city plan Balfour Street between Bath and Jenks Streets; nor has it stricken from the city plan Jenks Street between Bath Street and the Delaware River.

13. The aforesaid deed was not executed and delivered within one year from November 12, 1925, as provided in the ordinance of the City of Philadelphia, approved on that date.

14. The aforesaid deed was not executed and delivered within one year from March 22, 1927, as required by the terms of the ordinance approved on that date.

### Discussion

The plaintiff, Pennsylvania Forge Company, executed to the City of Philadelphia a deed of dedication of land for part of a street. Plaintiff claims it delivered the deed to Mr. Fred Schwarz, who happens to be a county coroner but not the city's agent, and told him to hold it in escrow until the owner of contiguous land made a similar dedication covering his part of the street. The contiguous land was not so dedicated, and Mr. Schwarz did not so hold the deed, but he delivered it to someone who in turn recorded it. Thus arises a presumption of delivery to the City of Philadelphia.

In effect, the city admits everything except that the deed was delivered in escrow to Mr. Schwarz. This it denies, and by the testimony of Mr. Schwarz the city offers evidence to the effect that the Pennsylvania Forge Company, through its Mr. Davis, authorized the delivery of the deed of dedication, and was so influenced because it, the plaintiff, desired that a certain contractor should receive payment from the city for paving which he did on Bath Street, which is a boundary of the forge company's property. This work had been done on orders from the city, but the city felt that it had no authority to pay the contractor unless and until there was this dedication from the Pennsylvania Forge Company.

Mr. Schwarz testified that this attitude of the city was known to Mr. Davis of the Pennsylvania Forge Company, and Mr. Davis admits that he knew it. He admits that while cognizant of these facts he wrote a letter on February 25, 1926, to Mr. Schwarz, in which he said, inter alia:

"This will enable you to take care of the contractor, who I understand has a considerable sum of money tied up. Under these conditions, and with the understanding that you will use your best efforts to have the Hitner Company do their part, I am sending you herewith the deed, which you gave me to be signed, duly executed."

Mr. Schwarz, as a result of his conversations with Mr. Davis and this letter which he believed was a confirmation of his authority to deliver the deed, did so deliver it.

It is clear that the determination of the question does not depend so much on the credibility of the witnesses as it does on the interpretation of the intention of the forge company, acting through Mr. Davis, in this matter. It looks very much as though Mr. Davis, being impelled by a desire to see the contractor paid, was willing to have this deed delivered.

We do not feel that the expression in the letter showing the forge company's desire that Mr. Schwarz should use his best efforts to get Hitner to dedicate affects the matter; that seems to be an expression of its desire and in no sense

a condition limiting Mr. Schwarz's right to deliver the deed. It certainly was not stated to be a condition precedent to delivering the deed. According to the uncontradicted testimony of Mr. Schwarz he used every effort to have Hitner dedicate, and, although he did not succeed, we see nothing in the letter that required that he should.

In answer to the court's questions, Mr. Davis said:

"By the court: Q. When you gave the deed with that letter, Mr. Davis, you wanted it to be used to help the contractor to collect? A. Exactly. Q. Didn't you realize that meant it would be recorded, could not help be? A. I did not expect, your honor, it to be recorded until Hitners dedicated. Q. But you did not say in your letter about not using it unless Hitner dedicated. A. The letter can be misinterpreted. I realize the language is rather weak. Q. You gave him a letter that indicated nothing except you wanted him to use it to help the contractor to collect? A. That's right. Q. And the only way obviously that could be effected would be to record that deed. Didn't you realize that? A. I did. The understanding was very clear that it was not to be used unless Hitner dedicated their half of the street. Q. But you did not mention that in your letter? A. I did not mention that."

On the one hand, the city was refusing to pay this contractor unless it had this deed of dedication. On the other hand, Mr. Davis, of the forge company, says he was very desirous of seeing the contractor paid. Suppose we assume that he did not intend that this deed should be delivered for recording, but he knew that the city would not pay the contractor unless that deed was recorded, we must then note the lack of care in restricting the use of it, as shown by the letter. This lack of caution marks the plaintiff's conduct of the whole transaction. Undoubtedly it was without fraud on the part of the city that the deed was recorded, and as a result the contractor was paid. The city was thus led into a situation which it was seeking to avoid. Where two innocent parties suffer, the one whose conduct made the wrongful use of the instrument possible is the one who must lose. On this view of the case the plaintiff is not entitled to the relief prayed for.

The plaintiff, Pennsylvania Forge Company, contends that because this deed was given, as it claims, in pursuance of two certain ordinances passed by the city, and since the city has not complied with the terms of those ordinances, the deed should be ordered canceled. Undoubtedly the conveyance of certain property by the deed in question was inspired by the existence of these ordinances which contemplated street improvements that were considered beneficial to the plaintiff, and at one time it was in the minds of all the parties that the dedication by the plaintiff should not be made unless there was secured from a neighboring owner a similar dedication covering one-half of the bed of the street. This dedication never materialized on the part of the neighbor and this should have concluded the matter. This would be the situation if it were not for the fact that the plaintiff, due to its desire to see paid the contractor who paved the street, permitted its deed to be delivered.

We cannot determine as a matter of law, however, that the city is obliged to carry out the terms of those ordinances. They were passed containing a condition to be performed by the forge company and its neighbor owner. The condition has been performed by the forge company but not by the neighbor owner. It may be true, and we think it is, that there is some moral obligation upon the part of the city to pass new ordinances giving to this plaintiff the benefit of its generosity and good faith in the matter. We have confidence enough in city council to believe that it will do this. We have no power, however, to act under this suggestion. We can make no such order on city council.

### Conclusions of law

1. The deed of dedication referred to in the findings of fact for portions of the bed of Bath Street and Buckius Street was lawfully executed by the Pennsylvania Forge Company, the owner thereof, on February 23, 1926.

2. The said deed was delivered to Fred Schwarz, Jr., accompanied by a letter making no reservations or conditions as to its use.

3. The said Fred Schwarz, Jr., received the said deed of dedication for and on behalf of the City of Philadelphia.

4. The deed was lawfully recorded and should not be canceled of record.

5. The bill should be dismissed.

Therefore, we believe that the plaintiff's bill is not sustained by the testimony, and for that reason the bill is dismissed, at the cost of the plaintiff.

### Decree nisi

And now, to wit, October 4, 1932, upon consideration of the foregoing case, it is ordered, adjudged and decreed that the bill of complaint be dismissed, at the cost of the plaintiff.

NOTE.—Exceptions to the foregoing decree were dismissed by the court on March 28, 1933.